# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROY HALL.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO:** |
| | ) | **2:17-cv-00289-KOB** |
| **CVS HEALTH CORP.; CVS** | ) | |
| **PHARMACY, LLC.; MIKE** | ) | |
| **DRAMER;** | ) | |
| and **CODY BERGUSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This matter is before the court on Defendants' "Motion to Dismiss, or,

Alternatively to Stay, and to Compel Arbitration." (Doc. 6). Plaintiff Roy Hall sued

Defendants CVS Corporation; CVS Pharmacy, LLC; Mike Dramer; and Cody

Berguson, alleging claims under the Age Discrimination in Employment Act of 1967,

Alabama Age Discrimination in Employment Act, Civil Rights Acts of 1964, Civil

Rights Act of 1866, Consolidated Omnibus Budget Reconciliation Act, and laws of the

State of Alabama. (Doc. 1). CVS contends that an arbitration agreement requires

Plaintiff Hall's claims to be addressed through arbitration, while Mr. Hall contends no

such agreement exists. For the reasons discussed in this Memorandum Opinion, the

court FINDS that a genuine dispute of material fact exists regarding the formation of

1

the arbitration agreement, which must be determined by a trial. Therefore, the court will **DENY** CVS's motion; the parties will proceed to trial on the limited question of whether Mr. Hall opted out of the arbitration agreement.

## I. BACKGROUND

### A. Mr. Hall's Position and Termination

Plaintiff Roy Hall is an African American male, over the age of 40, who worked as a CVS pharmacist for more than 20 years at its Eastlake and Roebuck, Alabama, locations before CVS terminated his employment in December 2015. Defendant Dramer was a CVS district manager and Defendant Berguson was a CVS Pharmacy supervisor during the time relevant to this case.

Mr. Hall worked the night shift at the Roebuck CVS location for 19 years. In 2014, he made at least two requests to transfer to the day shift, which CVS denied. CVS also denied Mr. Hall salary increases at each of his performance reviews for six straight years, explaining that his store's numbers/metrics were not meeting expectations. Sometime around February 14, 2014, Mr. Hall took his complaints further up the chain to Mr. Colquitt, a CVS Pharmacy supervisor, and then to the Human Resources Manager at CVS's headquarters.

CVS eventually transferred Mr. Hall to the Eastlake location in July 2014 and assigned him to the day shift. There, Mr. Hall received his first pay increase in 6 years. But, Mr. Hall alleges that Mr. Berguson cut the number of labor hours for the Eastlake

location and changed the pharmacy metrics to make it more difficult for Mr. Hall to meet his goals because he was angry that Mr. Hall complained to corporate headquarters. As a result, Mr. Hall had less pharmacy tech support and he had to perform multiple duties that are not generally performed by CVS pharmacists, such as operating the cash register, stocking, and "numerous other sales and administrative duties." (Doc. 1 at 9).

In late October, 2015, Mr. Hall unintentionally "mis-filled" a prescription by providing a customer with the wrong dosage of medication. The customer discovered the error, returned the medication the same day, and Mr. Hall noted the error on the pharmacy log. This was Mr. Hall's first "mis-fill" in his career with CVS.

Mr. Berguson and District Manager Yeatman investigated the incident according to CVS policy. CVS never suspended Mr. Hall for the mis-fill and he continued working at the Eastlake location up until December 4, 2015. On that day, Berguson and Yeatman informed Mr. Hall that CVS was terminating his employment at the end of his shift. The only explanation Mr. Hall received was that CVS policy required the termination and that the decision was over Berguson's and Yeatman's heads. (*Id.* at 10).

## B. The Arbitration Agreement and Opt-out Provision

In October 2014, CVS introduced an arbitration policy under which CVS and its participating employees waive their right to pursue employment-related claims in

court. (Doc. 7 at 3). On October 5, 2014, CVS invited its employees to participate in a training course, *Arbitration of Workplace Legal Disputes*. The course explained the employee's rights as to arbitration, the manner in which they accept the policy's terms, and how they may opt out of the policy. (*Id.* at 5).

The policy provided that employees would accept the policy by continuing their employment with CVS Health after becoming aware of the policy, but allowed employees to opt out within 30 days of first viewing or receiving the policy. (Doc. 6-1). To opt out, the policy explained that an employee

> must mail a written, signed and dated letter stating clearly that he or she wishes to opt out of the CVS Health Arbitration of Workplace Legal disputes Policy. The letter must be mailed to [ CVS's P.O. Box in Rhode Island]. In order to be effective, the colleague's opt out notice must be postmarked no later than 30 days after the colleague first views or receives the policy. Please Note, sending in a timely notice is the only way to opt out. A colleague cannot opt out by refusing to complete training or attend meetings about the policy.

(Doc. 6-1 at 27).

The policy also informed employees that it covers

> any and all legal claims, disputes or controversies [between CVS and an employee, including] disputes regarding . . . harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, the Americans with Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act . . . and other federal, state and local statutes, regulations and other legal authorities relating to employment.

(Doc. 6-1 at 9–10). And, the policy notified employees that "Covered Claims" include

4

"any and all legal claims, disputes or controversies" against "its parents, subsidiaries, successors or affiliates, or one of its employees or agents." (*Id.* at 3).

CVS directed Mr. Hall to complete the course through CVS's "LearNet" system, which he did on December 26, 2014. (Doc. 6-1 at 33). After viewing the policy's opt-out procedures, Mr. Hall contends that he went to the Tarrant, Alabama post office the following week and mailed the opt-out letter to CVS's post office box in Rhode Island. (Doc. 17 at 1–2). Mr. Hall did not mail his letter certified or registered mail, nor has he produced a copy of the letter or any other evidence tending to show that he actually mailed it. Likewise CVS has no record of the letter and contends that it never received it.

## II.    STANDARD OF REVIEW

Section 4 of the Federal Arbitration Act states that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The Eleventh Circuit has held that "a summary judgment-like standard is appropriate" and "that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement.'" *Bazemore v. Jefferson Capital Sys., LLC.*, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

The court must "view the evidence presented through the prism of the

substantive evidentiary burden" to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must not weigh the evidence and make credibility determinations because these decisions belong to a jury. *See id.* at 254.

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). However, a dispute is not "'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "Conclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment." *Baloco*, 767 F.3d at 1333 (citing *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir 2000)) (quotation marks omitted). However, "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (citing *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (2013)).

## III.   DISCUSSION

The issue before the court is whether CVS and Mr. Hall entered into a binding

arbitration agreement that requires all of Mr. Hall's claims to be resolved in arbitration rather than in this court. CVS contends the two parties executed a valid contract requiring arbitration, while Mr. Hall argues that he took advantage of the policy's "opt-out" provision, which prevented the contract's formation. The parties have conducted limited discovery on the matter and submitted their briefings with accompanying evidence to the court.

When such disputes arise regarding the existence of an arbitration agreement, the FAA provides that a trial is the appropriate means to resolve them. *See* 9 U.S.C. § 4. The Supreme Court has stated that "[t]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Further, a court must either stay or dismiss a lawsuit and compel arbitration when "(a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4). Also, the court may employ a "summary judgment-like standard" to determine whether the agreement exists. *Bazemore v. Jefferson Capital Sys., LLC.*, 827 F.3d 1325, 1333 (11th Cir. 2016).

Therefore, CVS's contention that an arbitrator must determine whether an arbitration agreement exists between Mr. Hall and CVS is incorrect. The plain

language of the FAA states that a trial is appropriate to resolve "disputes . . . regarding the existence of an arbitration agreement" and the Eleventh Circuit has consistently found that district courts are to determine whether the parties actually formed a contract to arbitrate claims. 9 U.S.C. § 4; *See Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338 (11th Cir. 2017) (District court did not err in holding bench trial on issue of validity of employee's signature on arbitration agreement); *Bazemore*, 827 F.3d at 1329 (11th Cir. 1995); *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (Absent an arbitration agreement, "a court cannot compel the parties to settle their dispute in an arbitral forum."). Also, "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Dasher v. RBC Bank*, 745 F.3d 1111, 1116 (11th Cir. 2014).

"[T]he FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4). The court now reviews the evidence submitted by the parties to determine whether any genuine dispute of material fact arises regarding the existence of a contract.

### A. The Scope of the Arbitration Agreement

Because the parties do not contest the issue, the court will begin its analysis by addressing the question of whether the claims before it fall within the scope of the alleged arbitration agreement. *See Lambert*, 544 F.3d at 1195. After quickly establishing that Mr. Hall's claims would fall within the scope of CVS's arbitration plan, the court will then engage in the more complex analysis of whether the parties entered into the arbitration agreement.

The alleged agreement covers "any and all legal claims, disputes or controversies" between CVS and Mr. Hall, including "disputes regarding . . . harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, . . . and other federal, state and local statutes, regulations and other legal authorities relating to employment." (Doc. 6-1 at 9–10). The policy also covers "any and all legal claims, disputes or controversies" against CVS "employees or agents." (*Id.* at 3).

Mr. Hall brought his claims against CVS and its employees under federal and state discrimination and employment law, and state tort law. All the claims arise strictly out of events and circumstances related to his employment with CVS, and Mr. Hall makes no argument to the contrary. Therefore, the court finds that each of Mr. Hall's claims in this case would fall within the scope of CVS's alleged arbitration agreement, and Mr. Hall would be required to pursue them in arbitration if he is bound by the arbitration plan.

### *B. Whether the Arbitration Agreement is Enforceable under Alabama Law*

As stated above, state law governs the issue of whether Mr. Hall and CVS entered into a valid contract to arbitrate the claims presently before the court. CVS asserts that Alabama law applies to this case and Mr. Hall makes no argument to the contrary. Because the contract was allegedly formed in Alabama, the court finds no reason that any other state's law would control, and recognizes that under Alabama law, an enforceable contract requires "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Ex parte Cain*, 838 So. 2d 1020, 1026 (Ala. 2002) (quotation omitted). Assent is ordinarily manifested by signature, but may also be manifested by ratification. *Id.* at 1027.

CVS argues that it made an offer to Mr. Hall to enter into the arbitration agreement when it notified him of the Arbitration Policy by way of the Arbitration Training Course; made the Arbitration Policy Guide available to him at no cost; offered him the opportunity to opt out along with instructions on how to do so; and informed him that his continued employment would constitute acceptance of CVS's offer to arbitrate. (Doc. 7 at 13–14). CVS contends Mr. Hall accepted its offer by completing the training course, reading the arbitration policy, continuing to work with CVS after becoming familiar with the policy, and failing to mail in the opt-out letter after being informed of the arbitration policy and opt-out requirements.

Mr. Hall, on the other hand, argues that he never accepted the offer and CVS

cannot show mutual assent—two of the required elements to create a binding contract. He contends that CVS presented him with "a generic policy and training module that were not individualized to [him]," and now, CVS cannot produce any signed agreement between the parties indicating Mr. Hall's consent to arbitrate. (Doc. 17 at 4–5). Mr. Hall further argues that he took advantage of the policy's provision allowing him to affirmatively opt-out of the arbitration agreement when he mailed his opt-out letter to CVS's post office box, as instructed in the policy. Thus, Mr. Hall's argument focuses on three ideas: (1) the arbitration policy is invalid because it is "not individualized" to Mr. Hall; (2) the policy is unenforceable because it does not contain Mr. Hall's signature; and (3) Mr. Hall refused acceptance by mailing his opt-out letter. The court will address each in turn.

### i. Whether the Arbitration Policy Itself is an Enforceable Document

Mr. Hall contends that CVS's production of "a generic policy and training module that were not individualized to Mr. Hall" is inadequate evidence of a written arbitration agreement. Presumably in support of this argument, Mr. Hall mentions that on May 4, 2016, the National Labor Relations Board found that CVS's "training module and policies at issue in this case" violate Section 7 of the National Labor Relations Act, and ordered CVS to notify all current and former employees that its arbitration training course, guide, policy, and agreement were rescinded. (Doc. 17 at 5).

The court will assume, for the sake of argument, that Mr. Hall asserts that the NLRB's order nullified any arbitration agreement that may have existed between him and CVS.

However, the NLRB's order dealt only with the policy's attempt to have employees waive their right to pursue class or collective actions, and did not address the validity of the arbitration agreement. The order stated: "By implementing and maintaining a mandatory arbitration program that requires employees, as a condition of employment, *to waive the right to maintain class or collective actions in all forums*, whether arbitral or judicial, unless employees individually opt out of the waiver, Respondent CVS RX Services, Inc. has violated Section 8(a)(1) of the Act." (Doc. 17-4 at 2–3) (emphasis added).

So, while the NLRB order does state that CVS's arbitration *program* preventing employees from pursuing "joint, class, or collective" actions is inappropriate, the order does not mention that its arbitration *provision* is inappropriate. But even if the Board intended its order to nullify all CVS's arbitration agreements, including Mr. Hall's, the order has no legal effect on the enforceability of those agreements until a court hears the case and chooses to enforce the order. *See* 29 U.S.C. § 160(e) ("The Board shall have power to petition any court of appeals of the United States . . . wherein the unfair labor practice in question occurred . . . for the enforcement of such order and for appropriate temporary relief or restraining order."); *Ona Corp. v. NLRB*, 729 F.2d 713, 718–19 (11th Cir. 1984) (the appellate courts give special respect to remedies chosen

by the Board, but do not function simply as the Board's enforcement arm). Because the Board's order against CVS was never enforced by a court, Mr. Hall's argument that it somehow nullifies the alleged arbitration agreement here lacks merit.

Mr. Hall acknowledges he took and completed CVS's Arbitration Training Course (doc. 17-1 at 10), that he read and printed copies of the materials (*id.* at 32–33), and that he understood at the time he took the course that he was bound by the arbitration program unless he took specific action to opt out (*id.* at 14–15). Nothing before the court suggests the training course's methods or the arbitration policy's language were unfair, unclear, or misleading. Nor does any other evidence suggest the policy was not a legitimate document, capable of binding both CVS and Mr. Hall to arbitrate any disputes arising within its scope.

### ii.      *Whether Mr. Hall's Signature was Required to Show Mutual Assent*

Mr. Hall argues that CVS's arbitration policy itself is not a valid arbitration agreement because it is not a written agreement containing Mr. Hall's signature. Mr. Hall further argues that for the arbitration agreement to exist, CVS must demonstrate "meeting of the minds" and a "written agreement." (*Id.*) (citing *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (Review of an order compelling arbitration turns on the establishment of a "meeting of the minds" to arbitrate); and 9 U.S.C. § 4 (Federal Arbitration Act requires "written agreement.")).

While an arbitration agreement must be in writing to be enforceable, and the

parties must assent to be bound by it, neither the FAA nor Alabama law requires a signature to demonstrate the parties' consent. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kilgore*, 751 So. 2d 8, 11 (Ala. 1999) ("The FAA only requires that there be a written provision in a contract; it does not specify that a party's assent to the terms of a contract containing an arbitration provision can be evidenced only by that party's signature.") (quotation omitted); *Ex parte Cain*, 838 So. 2d 1020, 1027 (Ala. 2002) (assent may be manifested by ratification rather than signature); *Ex parte Rush*, 730 So. 2d 1175, 1177 (Ala. 1999) (parties' signatures not necessary "to bring them within the arbitration provision set out in the [contract].").

Mr. Hall admits that he completed the training, read the arbitration policy, had the opportunity to print the policy at no cost, and understood that he needed to mail the opt-out letter to CVS to avoid being bound by the arbitration agreement. The absence of Mr. Hall's signature does not invalidate the agreement, nor does it preclude a finding of mutual assent; his continued employment with CVS, along with failure to send in an opt-out letter, would be sufficient to show his consent to the policy.

### iii. Whether Mr. Hall opted out of the arbitration agreement

Now the court turns to the question of whether Mr. Hall opted out of the arbitration policy by mailing his opt-out letter to CVS within 30 days of viewing the policy's opt-out procedures. More specifically, the policy required that, to opt out, Mr. Hall must (1) create a written, signed, and dated letter clearly stating his desire to opt

out of the arbitration policy; (2) mail (or "send[] in") that letter to CVS's P.O. Box in Woonsocket, Rhode Island; and (3) the letter must be postmarked no later than 30 days after he first viewed or received the policy. (Doc. 6-1 at 27).

"State law governs the issue of the existence of an agreement to arbitrate under the FAA." *Bazemore v. Jefferson Capital Sys., LLC.*, 827 F.3d 1325, 1330 (11th Cir. 2016). And, under Alabama law, "[t]he party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration." *Dannelly Enterprises, LLC. v. Palm Beach Grading, Inc.*, 200 So. 2d 1157 (Ala. 2016).

Because CVS is the party alleging that an arbitration agreement exists between it and Mr. Hall, CVS must prove that contract exists. Because that issue hinges on Mr. Hall's compliance with the arbitration policy's terms regarding opting out of the policy, CVS is forced to prove a negative—that Mr. Hall did not mail an opt-out letter that was also postmarked within 30 days of his viewing the arbitration plan.

In an effort to show that Mr. Hall did not opt out, and that the arbitration agreement does exist, CVS produced the affidavit of Robert Bailey, its Director of Talent Management, which states that CVS did not receive "any writing indicating [Mr. Hall's] desire to opt out of the Arbitration Policy on or before the thirtieth day after he first viewed or received the Arbitration Policy." (Doc. 6-1 at 7). Also, Ms. Rourke, the CVS employee responsible for maintaining the records of the opt-out letters, testified in her deposition that she never received the letter, nor do CVS's logs

15

show any record of its receipt. (Doc. 17-3 at 8, 16).

However, Ms. Rourke also testified that other CVS employees were tasked with the responsibility of gathering the letters from the P.O. Box, taking them to the mailroom at CVS's headquarters, and then distributing them to the legal department. (Doc. 17-3 at 4–7). From there, the facts are unclear whether members of Human Resources or an administrative assistant opened each of the letters, but some unidentified person or persons opened the letters, date stamped them, stapled them to the envelope they came in, and logged them into a spreadsheet. (*Id.*).

To dispute CVS's claim that Mr. Hall never mailed the letter and CVS never received it, Mr. Hall alleges that he complied with the arbitration policy's opt-out instructions by typing an opt-out letter and mailing it to CVS's post office box in Rhode Island the week after he completed the arbitration policy training and read the policy's terms. (Doc. 17 at 2). But, Mr. Hall is unable to submit any evidence beyond his own memory of having written or mailed the letter. Mr. Hall admits that he did not send his letter certified or registered mail, and therefore has no confirmation that he sent the opt-out letter from the post office. He also does not have any documentation from CVS confirming that CVS received the letter. Nor does Mr. Hall have a copy of the letter or any other evidence that the letter ever existed.

Mr. Hall also argues that the policy only required that he mail the letter to the designated address, not that CVS *receive* the letter; nor did it require him to retain some

sort of proof that he mailed the letter. He further argues that CVS is unable to prove that it did not receive Mr. Hall's letter and then somehow misplace it before logging its receipt into its system. So, Mr. Hall argues, he did all that was required to avoid the arbitration agreement, CVS cannot prove the arbitration contract exists, and he should be able to litigate his claims in this court.

CVS bears the burden to prove the existence of the contract and has not done so. However, a reasonable juror could conclude that if Mr. Hall actually mailed the letter, CVS would have received it. Further, Mr. Hall is unable to furnish any evidence showing that he satisfied the third requirement of the opt-out provision—that the opt-out was postmarked within 30 days of his viewing the policy.

So, the court is left with contradictory evidence regarding whether Mr. Hall mailed the opt-out and whether it was postmarked within the time allowed by the arbitration policy. The court thus finds that a genuine issue of material fact exists as to whether the parties formed a valid contract to arbitrate Mr. Hall's claims, and that question of fact must be determined by a trial. *See* 9 U.S.C. § 4; *Bazemore v. Jefferson Capital Sys., LLC.*, 827 F.3d 1325, 1333 (11th Cir. 2016).

## IV.  CONCLUSION

The court finds CVS's arbitration policy is a valid offer, supported by adequate consideration, which would form an enforceable contract to arbitrate Mr. Hall's claims against CVS *if* CVS could show that Mr. Hall accepted that offer. The court further

finds that Mr. Hall's claims would fall within the scope of the alleged arbitration agreement. However, because a genuine dispute of material fact exists regarding whether Mr. Hall mailed an opt-out letter that was postmarked within the time allowed by the arbitration policy, the court will DENY CVS's motion to compel arbitration WITHOUT PREJUDICE.

This matter will proceed to trial on the question of whether an arbitration agreement exists between Plaintiff Hall and Defendant CVS. The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** this 7th day of March, 2018.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE